United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ZIRCON CORPORATION,                         No. C-09-0042-EDL

              Plaintiff,               **ORDER CONSTRUING CLAIM TERM
                                       AND GRANTING MOTION FOR
     v.                                SUMMARY JUDGMENT OF NON-
                                       INFRINGEMENT**
THE STANLEY WORKS,

              Defendants.
_____

        Defendant The Stanley Works ("Stanley") moves for Summary Judgment of Non-Infringement

of Plaintiff Zircon Corporation's ("Zircon") U.S. Patent No. 7,116,091 (the "'091 Patent"), which

discloses a device for "ratiometric stud sensing."  The parties agree that the entire matter may

potentially be decided as a matter of law based on application of the properly construed claim term

"ratio" to the accused device.  Defendant also contends that summary judgment of non-infringement

can be granted based on the theories of disclosure-dedication and prosecution history estoppel.

Having considered the parties' respective arguments, the Court construes the term "ratio" as "a

result of dividing two values" and GRANTS summary judgment of no literal infringement based on

this construction.  Additionally, summary judgment of non-infringement under the doctrine of

equivalents is warranted based on prosecution history estoppel, and the theory of disclosure-

dedication.

I.    **Background**

      A.    **The '091 Patent Claims**

        This case relates to electronic "stud-finders," which are used for locating studs (i.e., structural

members of a building to which an interior wall surface is affixed) or other objects hidden behind a

1   wall surface.  See Kiersz Decl. Ex. A ('091 Patent) at 1:14-29. Stud-finders typically use capacitance

2   sensors that measure a change in capacitance due to a change in the "dielectric constant" as the

3   sensor is moved along the wall surface and encounters a stud.  Id. at 1:30-36; see also Clay Laster,

4   The Beginner's Handbook of Amateur Radio 91-93 (3d ed. 1994) (attached as Gikkas Decl., Ex. F)

5   (capacitance is "the ability to store an electrical charge in a dielectric or insulating material").

6       Zircon's '091 Patent, entitled "Ratiometric Stud Sensing," discloses an "electronic stud-sensor

7   used to detect centerlines and edges of wall studs, floor joists, and the like."  '091 Patent at 1:10-12.

8   To accomplish this, the invention includes a radiometric capacitive sensor which may use

9   "capacitive measurements from multiple conductive plates" to determine the presence of objects

10  hidden behind a covering surface.  Id. at 4:30-33.  The sensor has circuitry coupled to each plate

11  which "measures an effective change in capacity of the separate capacitors, which is effected by the

12  density of the material in close proximity to the plates."  Id. at 4:36-39.  The "capacitance

13  measurement from one plate may then be compared to a capacitance measurement of another plate

14  to determine boundaries and features of materials in the vicinity of the plates."  Id. at 4:43-46.  The

15  patent specification discloses various methods for comparing the capacitances of two plates to

16  determine a stud centerline or edge.

17      For example, the '091 Patent specification discloses a method by which the invention

18  computes a "ratio between the first and second capacitance measurements" to find the centerline of a

19  stud.  Id. at 7:25-27.  Specifically, some embodiments calculate a ratio between the measurements of

20  the first and second plates, and if the measurements are equal or the ratio is approximately equal to

21  "unity," (i.e., one), the stud-finder may be centered over the centerline of the stud.  Id. at 7:20-34

22  ("In some embodiments, capacitance measurements are used to calculate a ratio. . . . A ratio between

23  the first and second capacitance measurements may be computed. . . . . If the capacitance

24  measurements are equal or the ratio is approximately equal to unity, both plates may be centered

25  over the stud's edge and the centerline of the sensor may be centered over the centerline of the

26  stud.") (internal diagram numbering omitted).  Additionally, the '091 Patent discloses the

27  comparison of a "transition ratio" to a "calculated ratio" to determine the edge of a stud.  Id. at 7:62-

28  8:38.  A transition ratio "predicts a capacitance ratio formed at an edge of a stud when the sensor is

United States District Court
For the Northern District of California

1   centered over the stud's edge for a particular wall structure." Id. at 7:65-8:1.  "A transition ratio can

2   be determined in a number of ways.  The transition ratio may be a factory set constant.  A transition

3   ratio may be set by an operator.  In some embodiments, the transition ratio is calculated during

4   operation." Id. at 8:4-8.

5       Stanley distinguishes the "ratio" method described above, which Stanley contends is a *division*

6   method, from what it views as a second method for comparison disclosed in the patent specification

7   – a *subtraction* method  – whereby the first and second capacitance measurements are subtracted

8   from each other, and the device is centered when the measurements are equal to each other (i.e.,

9   "within an . . . absolute value from each other.")  Id. at 14:50-66 ("comparison circuit may determine

10  that the sensor is centered over a stud by detecting that the capacitance measurements are equal to

11  each other and also above a floor threshold.  Capacitance measurements may be considered equal

12  when they are within a predetermined percentage value or absolute value from each other").

13      Every independent claim of the '091 Patent claims "computing" or "generating" "a ratio of the

14  first and second capacitances." See id. at 20:64, 21:42, 21:57, 22:62-63, 23:57-58, 24:31, and 24:49-

15  50.  None of the independent claims expressly provide an alternative method of subtraction to

16  compare capacitance measurements.  Stanley therefore contends that the specification discloses both

17  the division and subtraction methods, but fails to claim the subtraction method, and the claim term

18  "ratio" should be construed as limited to a method of division to compare capacitance measurements

19  in the patent claims, and not encompassing a method whereby capacitance measurements are

20  subtracted from one another.  Zircon counters that the '091 patent discloses and claims both a

21  division and subtraction method for comparing capacitance measurements because the claim term

22  "ratio" should be more broadly construed to encompass subtraction as well as division.

23      **B.**    **Prosecution History of the '091 Patent**

24      The '091 Patent issued from U.S. Patent Application No. 10/794,356 (the "'356 Application").

25  The original independent claim 1 of the '356 Application disclosed a method of "computing a ratio

26  of the first and second capacitances" to find a feature behind a surface.  Kiersz Decl. Ex. C at S039.

27  The original independent claim 21 of the '356 Application recited more generally  "comparing the

28  first and second capacitances."  Kiersz Decl. Ex. C at S041.   Original dependent claims 23 and 24

**United States District Court**
For the Northern District of California

(dependent on claim 21) further specified alternative ways in which the capacitances could be compared to find the centerline of a stud: either by "determining whether the first and second capacitances differ by less than a threshold" (original claim 23) or "computing a ratio between the first and second capacitances" (original claim 24). Id. at S041-42.[1]  All of the other original independent claims of the '356 Application referred only to determining a "ratio." Id. at S039-44.

In a preliminary amendment not made in response to any Office Action, Zircon amended original claim 21 to depend from claim 1, and added: "the computing a ratio comprising: comparing the first and second capacitances; and repeating the acts of measuring and comprising." Id., Ex. E at S094.  According to Stanley, by making this amendment, Zircon necessarily incorporated claim 1's "computing a ratio of the first and second capacitances" term into claim 21, and forfeited claim 21's previous broad coverage over any approach "comparing" the two capacitances, limiting it to the ratio approach.  The original claims 23 and 24, which claimed "determining whether the first and second capacitances differ by less than a threshold" and "determining whether the ratio is within a predetermined range of one," respectively, remained unchanged in all relevant respects. Id. at S095. Zircon counters that its amendment to original claim 21 was made only to put the claim in proper dependent form, i.e., the term "computing a ratio" was inserted as a matter of proper claim drafting practice simply so that it had proper antecedent basis in claim 1. Id. at S094.  It notes that the term "computing a ratio" in original claim 1 was not amended. Id. at S091.  Therefore, and as discussed further below, according to Zircon the amendments to original claims 1 and 21 did not limit or amend the term "ratio."

Thereafter, the Examiner issued an Office Action rejecting, among others, amended claims 1 and 21. Id., Ex. F at S116.  However, the Examiner found that dependent claim 8 was allowable if amended so as not to depend from rejected claim 1 and if it was changed into independent form. Id. at S124.  In response, Zircon filed an amendment of claim 8 (and others) in which it made claim 8 an independent claim that required "computing a ratio of the first and second capacitances." Id., Ex. G at S137.  The amendment also made original claim 21 dependent on claim 8. Id. at S139.  The

---

[1] For the sake of simplicity, this Order focuses primarily on the claims relevant to finding a centerline, but the Court notes that its reasoning regarding the claim term "ratio"also applies to invention's process of finding an edge.

1  original claim 23, which claimed "determining whether the first and second capacitances differ by

2  less than a threshold" to find a centerline, remained unchanged in all relevant respects and remained

3  dependent on original claim 21.  Id. at S140.

4  Amended '356 Application claim 8 was ultimately allowed as '091 Patent claim 10, which

5  continued to include the "ratio" limitation.  '091 Patent at 21:42.  All other independent claims of

6  the '356 Application, which became the '091 Patent, contain the "ratio" limitation.  See generally id.

**C.    The Accused Stanley Works Products and Stanley's Motion**

8  Zircon accuses Stanley's Stud Sensor 200 and FatMax Stud Sensor 400 of infringing the '091

9  Patent.  Stanley contends that its accused products do not infringe because they use the "subtraction"

10  method disclosed but not claimed in the patent, and do not use the "ratio" approach claimed in all

11  independent claims of the patent.  See Nang Decl. at ¶¶ 8-17.  Specifically, Stanley points out that its

12  products include capacitor plates A and B, and generate stud voltages $V_A$ and $V_B$ that indicate the

13  capacitances of plates A and B.  Id. at ¶¶ 5-7, 13.  The products include a processor that compares

14  $V_A$ and $V_B$ (i.e., the capacitances of plates A and B) by subtracting one from the other to obtain a

15  "difference voltage," $V_D$.  Id. at ¶¶ 8-16.   The processor determines that the stud finder is centered

16  over a stud when $V_D$ equals approximately zero volts.  Id. at ¶¶ 9-15.  According to Stanley, this

17  means that its stud finders determine capacitance by subtraction, and never generate or compute a

18  ratio of plates A and B, or voltages $V_A$ and $V_B$ by division to detect a stud behind a wall.  Id. at ¶¶ 17.

19  Zircon's opposition does not dispute that the accused devices work this way, but instead argues that

20  this admitted method of operation infringes under a proper construction of the term "ratio."  Thus

21  the primary issue in dispute for purposes of Stanley's motion is the proper construction of the claim

22  term "ratio," and specifically whether it is limited to division or also includes subtraction.

**II.    Claim Construction**

**A.    Legal Standard**

25  In construing claims, the court must begin with an examination of the claim language itself.

26  The terms used in the claims are generally given their "ordinary and customary meaning."  See

27  Phillips v. AWH Corp., 415 F.3d 1303, 1312-13 (Fed. Cir. 2005); see also Renishaw PLC v.

28  Marposs Societa' per Azioni, 158 F.3d 1243, 1248 (Fed. Cir. 1998) ("The claims define the scope of

**United States District Court**
For the Northern District of California

the right to exclude; the claim construction inquiry, therefore, begins and ends in all cases with the actual words of the claim."). This ordinary and customary meaning "is the meaning that the terms would have to a person of ordinary skill in the art in question at the time of the invention . . . ." Phillips, 415 F.3d at 1313. A patentee is presumed to have intended the ordinary meaning of a claim term in the absence of an express intent to the contrary. York Products, Inc. v. Central Tractor Farm & Family Ctr., 99 F.3d 1568, 1572 (Fed. Cir. 1996).

Generally speaking, the words in a claim are to be interpreted "in light of the intrinsic evidence of record, including the written description, the drawings, and the prosecution history, if in evidence." Teleflex, Inc. v. Ficosa North Am. Corp., 299 F.3d 1313, 1324-25 (Fed. Cir. 2002) (citations omitted); see also Medrad, Inc. v. MRI Devices Corp., 401 F.3d 1313, 1319 (Fed. Cir. 2005) (court looks at "the ordinary meaning in the context of the written description and the prosecution history"). "Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).

With regard to the intrinsic evidence, the court's examination begins, first, with the claim language. See id. Specifically, "the context in which a term is used in the asserted claim can be highly instructive." Phillips, 415 F.3d at 1314. As part of that context, the court may also consider the other patent claims, both asserted and unasserted. Id. For example, as claim terms are normally used consistently throughout a patent, the usage of a term in one claim may illuminate the meaning of the same term in other claims. Id. However, the court may also consider differences between claims as a guide to understanding the meaning of particular claim terms. Id.

Second, the claims "must [also] be read in view of the specification, of which they are a part." Id. at 1315. When the specification reveals a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess, the inventor's lexicography governs. Id. at 1316. Indeed, the specification is to be viewed as the "best source" for understanding a technical term, informed as needed by the prosecution history. Id. at 1315. As the Federal Circuit stated in Phillips, the specification is "the single best guide to the meaning of a disputed term," and "acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by

implication." 415 F. 3d at 1321.

Limitations from the specification, however, such as from the preferred embodiment, cannot be read into the claims absent a clear intention by the patentee to do. <u>Altiris v. Symantec Corp.</u>, 318 F.3d 1363, 1372 (Fed. Cir. 2003) ("resort to the rest of the specification to define a claim term is only appropriate in limited circumstances"); <u>Teleflex</u>, 299 F.3d at 1326 ("The claims must be read in view of the specification, but limitations from the specification are not to be read into the claims.") (citations omitted); <u>CCS Fitness, Inc. v. Brunswick Corp.</u>, 288 F.3d 1359, 1366 (Fed. Cir. 2002) ("a patentee need not describe in the specification every conceivable and possible future embodiment of his invention").

"[T]here is sometimes a fine line between reading a claim in light of the specification,  and reading a limitation into the claim from the specification. . . . [A]ttempting to resolve that problem in the context of the particular patent is likely to capture the scope of the actual invention more accurately than either strictly limiting the scope of the claims to the embodiments disclosed in the specification or divorcing the claim language from the specification." <u>Decisioning.com, Inc. v. Federated Dept. Stores, Inc.</u>, 527 F.3d 1300, 1307-08 (Fed. Cir. 2008) (quoting <u>Comark Comm'ns, Inc. v. Harris Corp.</u>, 156 F.3d 1182, 1186 (Fed. Cir. 1998)).  There is therefore "no magic formula or catechism for conducting claim construction," and the court must "read the specification in light of its purposes in order to determine whether the patentee is setting out specific examples of the invention to accomplish those goals, or whether the patentee instead intends for the claims and the embodiments in the specification to be strictly coextensive." <u>Id</u>. (internal citations omitted).

Finally, as part of the intrinsic evidence analysis, the court "should also consider the patent's prosecution history, if it is in evidence." <u>Phillips</u>, 415 F.3d at 1317.  The court should take into account, however, that the prosecution history "often lacks the clarity of the specification" and thus is of limited use for claim construction purposes.  <u>Id</u>.

In most cases, claims can be resolved based on intrinsic evidence.  <u>See</u> <u>Vitronics</u>, 90 F.3d at 1583.  Only if an analysis of the intrinsic evidence fails to resolve any ambiguity in the claim language may the court then rely on extrinsic evidence, such as expert and inventor testimony, dictionaries, and learned treatises.  <u>See</u> <u>Vitronics</u>, 90 F.3d at 1583 ("In those cases where the public

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  record unambiguously describes the scope of the patented invention, reliance on any extrinsic

2  evidence is improper").  "Within the class of extrinsic evidence, the court has observed that

3  dictionaries and treatises can be useful in claim construction."  Phillips, 415 F.3d at 1318.  While

4  expert testimony can be useful to a court for a variety of purposes, conclusory assertions by experts

5  are not useful to a court.  Id.  The court generally views extrinsic evidence as less reliable than the

6  patent and its prosecution history in determining how to read claim terms, even though consideration

7  is within the court's sound discretion.  See id. at 1318-19.

8  **B.      Proper Construction of the Term "Ratio"**

9          The parties agree that Stanley's motion for summary judgment of no literal infringement may

10  be decided based on the proper construction of the term "ratio" as it is used in every independent

11  claim of the '091 patent.  Stanley proposes that the term "ratio" of the '091 patent should be

12  construed as "a result of dividing two values."  Zircon proposes that the term should be construed

13  more broadly as "relation in degree or number between two similar things."  For the following

14  reasons, the Court adopts Stanley's proposed construction.

15  **1.      Stanley's Proposal: A Result of Dividing Two Values**

16          Stanley argues that all of the intrinsic evidence supports its proposed construction and that the

17  plain meaning of the term ratio is limited to division and does not include subtraction.  Specifically,

18  Stanley contends that the specification confirms its proposed construction of the term by explicitly

19  defining "ratio" as the result of dividing two values.  For example, the specification provides that:

20  "A ratio between the first and second capacitance measurements may be computed. . . . If the

21  capacitance measurements are equal or the ratio is approximately equal to unity, both plates may be

22  centered over the stud's edge [] and the centerline [] of the sensor [] may be centered over the

23  centerline [] of the stud[]."  '091 Patent at 7:20-23 (internal numbering omitted).  A description of

24  Figure 5E explains that a ratio of capacitance measurements of the two plates "may be computed as

25  the smaller capacitance divided by the larger capacitance, thereby resulting in a ratio that is equal to

26  or less than one."  Id. at 7:45-52.  Similarly, the specification provides that:

27          When the first plate [] produces a capacitance that is greater than the capacitance
           produced by the second plate[], a ratio is calculated by dividing the second plate's
28          change in capacitance value by the larger first plate's change in capacitance
           value.  Similarly, when the first plate [] produces a capacitance that is less than

the capacitance produced by the second plate [], the ratio is calculated by dividing the smaller first plate's change in capacitance value by the second plate's change in capacitance value. Formulaically, the ratio curve [] may be computed by:

$$cap\_ratio(D) = \frac{min\{FirstPlaceValue(D), SecondPlateValue(D)\}}{max\{FirstPlaceValue(D), SecondPlateValue(D)\}}$$

Id. at 12:27-45. The specification also states that, "Dividing the smaller of the two capacitance measurements by the larger gives an updated capacitance ratio. The centerline of a stud may be determined when the capacitance ratio is equal to unity." Id. at 16:39-46. Stanley argues that these explicit references to dividing two numbers to obtain a "ratio" expressly support its proposed construction. The Court agrees with Stanley that these portions of the specification indicate that the term "ratio" connotes a division of two numbers, as opposed to subtraction.

Additionally, the fact that the references explain that the centerline is determined when the ratio is equal to "unity" (i.e., one) also shows that division, and not subtraction, is contemplated. Specifically, when two equal values are *divided*, the result is one, whereas when two equal values are *subtracted*, the result is zero. Stanley persuasively contends that Zircon understood this difference during drafting, because the specification states that a centerline has been detected "if the capacitance ratio is approximately equal to unity," or "alternatively," "if the capacitance measurements are approximately equal to each other." Id. at 19:30-34. Additionally, column 14:47-53 explains that the comparison circuit "may compute a ratio" or "may determine whether the capacitive measurements are within a predetermined value of each other." These portions of the specification, presenting ratio and subtraction as alternative operations, also point toward construction of the term "ratio" as limited to division, and not subtraction.

Stanley also persuasively argues that the way the ratio value is expressed throughout the patent supports the fact that it refers to a division of two values. Stanley asserts that, "[b]y definition, a ratio of two values measured in the same units has no unit. For example, 2 farads [a unit of capacitance] divided by 2 farads equals 1 (unitless)." Motion at 13. Stanley points out that, in the '091 Patent, all of the "ratio" values described in the patent are similarly unitless, which is consistent with the plain meaning of the term "ratio" and only make sense if they result from division that eliminates the units. See id. at 21:67, 22:16, 22:46, 22:67, 24:6, 24:33, 24:55. If they resulted from

United States District Court
For the Northern District of California

1   subtraction, the values would retain a unit; i.e., 2 farads minus one farad equals one farad.  Zircon

2   did not dispute this basic mathematical concept.

3       Stanley next argues that the prosecution history, and specifically Zircon's amendment of claim

4   1, confirms the correctness of its proposed construction.  Stanley points to Zircon's statement that:

5           Claim 1 has been amended to include the subject matter of allowable Claim 39
            and Claim 37 upon which Claim 39 was dependent.  Thereby the final clause of
6           Claim 1 now recites "providing an indication of the ratio, and wherein if the
            indication is approximately one, thereby locating a centerline of the structure."
7           The Claim 1 is now allowable for at least the same reasons as indicated by the
            Examiner for Claim 39.

8

9   Kiersz Decl. Ex. G (5/5/06 Amendment) at S146.  This passage also shows that Zircon understood

10  the meaning of "ratio" to be the unitless result of dividing the two values of the capacitance of the

11  sensor plates, and acknowledged that because the values of the plates will be substantially equal

12  when over the centerline of the stud, the value would be "approximately one" (always the result of

13  dividing any two numbers of equal value).

14      Finally, Stanley argues that extrinsic evidence confirms that the plain and ordinary meaning of

15  the term "ratio" connotes an elementary mathematical operation where two values are divided to

16  obtain a "ratio."  The Court agrees that Stanley's definition comports with the plain meaning of the

17  term.  Also, Stanley cites various dictionaries and other literature defining the mathematical term

18  "ratio" in terms of division of two values.  See generally Kiersz Decl. Exs. J, H, B.  Most

19  specifically, Stanley relies on the third, mathematical definition of the term listed in the American

20  Heritage Dictionary that a ratio is:  "the relative size of two quantities expressed as the quotient of

21  one divided by the other." American Heritage Dictionary, 2d Ed. 1028 (Houghton Mifflin Co. 1991)

22  (attached as Kierscz Decl. Ex. I).  Zircon does not challenge Stanley's reliance on the American

23  Heritage Dictionary to determine the plain meaning of the term "ratio," but argues that the Court

24  should use the first definition listed, or "relation in degree or number between two similar things."

25  Opp. at 7; see also Kierscz Decl. Ex. I.  However, the Court agrees with Stanley that the

26  mathematical dictionary definition (as opposed to the first dictionary definition) is appropriate,

27  because the references to "ratio" in the patent refer to a mathematical operation.

28

United States District Court
For the Northern District of California

1    **2.    Zircon's Proposal: Relation in Degree or Number Between Two**
2         **Similar Things**

3         Zircon relies on the first <u>American Heritage Dictionary</u> definition of ratio as "relation in

4    degree or number between two similar things," but spends very little time explaining how it is

5    consistent with most of the claims and specification.  Instead, Zircon's primary argument is that

6    Stanley's proposed construction of "ratio" is inconsistent with patent claims 10, 19 and 21.

7    Specifically, claim 10 discloses a method of "finding a feature" that includes the step "computing a

8    ratio."  '091 Patent at 21:48-60.  Dependent claim 19 provides that the "computing a ratio" of claim

9    10 comprises "comparing the first and second capacitances."  <u>Id</u>. at 22:20-24.  Claim 21, which is in

10   turn dependent on claim 19, further provides that the act of "comparing" as claimed in claim 19

11   includes "determining whether the first and second capacitances differ by less than a threshold."  <u>Id</u>.

12   at 22:33-39.  Zircon argues persuasively that the term "differ" in claim 21 is shorthand for

13   "difference," which relates to subtraction and not only division.  Indeed, Stanley agrees that the term

14   "differ" in the '091 Patent means subtraction and not division.  <u>See</u> Motion at 18-19 (arguing this

15   point in the context of the prosecution history).

16        Zircon contends that, under applicable rules of claim construction, independent claim 10 must

17   be broader than its dependent claims 19 and 21, which serve to limit claim 10.  Opp. at 9 (citing

18   <u>Monsanto Co. LLC v. Syngenta Seeds, Inc</u>., 503 F.3d 1352, 1357 (Fed. Cir. 2007) ("a claim in

19   dependent form shall be construed to incorporate by reference all the limitations of the claim to

20   which it refers.").  Therefore, according to Zircon, the "computing a ratio" of claim 10 cannot be

21   limited to division, because it necessarily also includes the subtraction approach of claim 21, which

22   is incorporated into claim 10 through claim 19.  If the Court construed "ratio" to include only

23   division and not subtraction, Zircon contends that this would be inconsistent with claims 10, 19, and

24   21 because they include the subtraction method as part of "computing a ratio," and therefore run

25   afoul of the rule that claims must be interpreted in context with other claims.

26        However, to accept this argument would be to create much more inconsistency between the

27   claims and to only selectively apply applicable patent law regarding dependent claims.  Patent

28   claims 1, 17, 22, 23, 31 and 32 expressly contemplate the invention finding a centerline when it

**United States District Court**
For the Northern District of California

1    detects a "ratio" of "approximately one" or some derivative thereof (i.e., 0.9-1.1). <u>See</u> '091 Patent at

2    21:66, 22:16, 22:46, 22:66-67, 24:6.[2]  This claim language only makes sense if the invention is

3    computing a ratio by dividing equal or almost-equal values to get a result of approximately one, and

4    not if the values were instead being subtracted, because in the latter case the result of subtracting

5    two equal values would be zero.  If "ratio" were interpreted to include subtraction in each of those

6    claims specifying that the result of the ratio should be close to one (i.e., in the range of 0.9 to 1.1) to

7    determine a centerline, then the device would not function properly to indicate that it was centered

8    over the stud in the very instance where it is most centered.

9         Central to both arguments is the relationship between dependent and independent claims and

10   how they should be construed.  <u>Monsanto</u> quotes 35 U.S.C. § 112 ¶ 4: "[A] claim in dependent form

11   shall contain a reference to a claim previously set forth and then specify a further limitation of the

12   subject matter claimed. A claim in dependent form shall be construed to incorporate by reference all

13   the limitations of the claim to which it refers." <u>Monsanto Co. LLC v. Syngenta Seeds, Inc</u>., 503 F.3d

14   1352, 1357 (Fed. Cir. 2007).  Zircon is correct that under its construction the independent claim

15   would be read more broadly than its dependent claim as required, but the same is true under

16   Stanley's construction.  Further, the statute does not mandate that the limitations in claims 10 and 19

17   must be read more broadly than drafted to sustain the validity of claim 21.  To support this

18   argument, Stanley relies on <u>Michilin Prosperity Co. v. Fellowes Mfg. Co.</u>, 450 F.Supp. 2d 35

19   (D.D.C. 2006), where the district court was asked to construe a dependent claim term.  In <u>Michilin,</u>

20   the patent at issue claimed invention of a shredder with at least two "touch switches" at claim 1

21   (though it disclosed the possibility of a one-switch shredder in the specification).  Claim 4,

22   dependent on claim 1, claimed a "single touch switch."  Michilin argued that the single switch of

23   claim 4 should be construed as a single-switch embodiment of the invention.  <u>Id.</u> at 39.  The

24   defendant countered that dependent claim 4 could not be construed that way because of its

---

[2]At oral argument, Zircon argued that claim 1 states that "if the indication is approximately one," then the device is located over a center line.  <u>See</u> '091 Patent at 20:65-67.  For the first time, Zircon focused on the term "indication" and argued that this is somehow distinguishable from a "ratio" of approximately one. However, Zircon's argument fails to take into account the context in which the term "indication" is used in claim 1, and that it is an "indication of the ratio" which must be approximately one.  Additionally, claims 22, 23, 31 and 32  do not use the term "indication" and require that the ratio be within a range of approximately one.   Therefore, the Court rejects Zircon's argument.

United States District Court
For the Northern District of California

1   dependent status, which meant that it must incorporate all of the limitations of claim 1 in addition to

2   any additional elements claimed.  Id.  However, the court reasoned that because independent claim 1

3   required at least two switches, the single switch of dependent claim 4 had to be construed as a third

4   switch, in addition to the two switches of claim 1 because "[a]ny other result would amount to

5   redrafting Michilin's claims, a power this court lacks."  Id.

6          Stanley argues that, following the reasoning of Michilin, to be a valid dependent claim, claim

7   21 must be construed as narrower than the independent claim it depends from, by covering an

8   embodiment combining the features of both variations (the division of claim 10 *in addition to* the

9   subtraction of claim 21).  Alternatively, Stanley contends that if claim 21 as drafted does not contain

10  a further limitation of claims 10 and 19, and instead contains a limitation of non-overlapping scope,

11  then it is invalid under § 112 ¶ 4.  See Pfizer, Inc. v. Ranbaxy Laboratories Ltd., 457 F.3d 1284,

12  1292 (Fed. Cir. 2006) (reversing district court and invalidating a dependent claim that failed to

13  "specify a further limitation of the subject matter"of the claim to which it referred because it was

14  completely outside the scope of claim).[3]  The Court agrees.  Either way, claim 10 cannot be

15  construed more broadly to accommodate dependent claim 21, especially where this construction

16  would create significant inconsistency with other claims.

17         Zircon also contends that Stanley's proposed construction does not comply with the doctrine of

18  claim differentiation.  This doctrine provides that "[t]here is presumed to be a difference in means

19  and scope when different words or phrases are used in separate claims.  To the extent that the

20  absence of such differentiation would make a claim superfluous, the doctrine of claim differentiation

21  states the presumption that the difference between claims is significant."  Tandon Corp. v. U.S. Int'l

22  Trade Comm'n, 831 F.2d 1017, 1023 (Fed. Cir. 1987).  Zircon argues that Stanley's proposed

23  construction of "ratio" would render claim 21 meaningless because "determining whether the first

24  and second capacitances differ by less than a threshold" is a limitation on the "act of comparing" in

25  claim 19, which is a limitation on "computing a ratio" in claim 10.  To give claim 21 any meaning,

26  according to Zircon, "ratio" must include both subtraction as well as division, and to find otherwise

27

28         [3]When questioned at oral argument, however, Stanley acknowledged that it is not moving on
    grounds of invalidity.

13

1    would violate the doctrine of claim differentiation.  Stanley counters correctly that the doctrine of

2    claim differentiation does not apply because neither party is advancing a construction of "ratio" that

3    would give claim 21 the same scope as another claim.  Zircon's construction of claim 10 is broader

4    than Stanley's because it includes both division and subtraction in "ratio," and then its construction

5    of claim 21 is narrower than its own construction of claim 10 because it is limited to subtraction,

6    whereas Stanley's construction of claim 10 is narrower than Zircon's because ratio is limited to

7    division, but its construction of claim 21 is narrower still because it must do both methods of

8    subtraction and division to detect a centerline.  Given the above, the Court does not find Zircon's

9    claim differentiation argument persuasive.

10         Finally, Zircon contends that Stanley's proposed construction improperly imports limitations

11   from the specification into the claims.  Zircon points out that, even if the specification discloses only

12   one embodiment or implementation for a claim element, that does not necessarily mean that all

13   requirements of that embodiment must be read onto the claim.  Instead of following up on this

14   argument, however, Zircon changes course and argues that the proposed construction is defective

15   because it is in conflict with the preferred embodiments described by Figures 12 and 13.  Zircon's

16   real argument appears to be, not that Stanley's proposed construction impermissibly relies on the

17   specification, but that it impermissibly conflicts with the specification.

18         Specifically, Zircon contends that the preferred embodiments described in Figures 12 and 13

19   show computing a ratio by methods other than "dividing two values."  The description of Figure 12

20   specifies that the capacitance circuit processes capacitance measurements, and states: "For example,

21   the comparison circuit [] may compute a ratio between capacitive measurements.  The comparison

22   circuit may determine whether the capacitive measurements are within a predetermined value of

23   each other."  '091 Patent at 14:47-53.  The description of Figure 13 explains that in that embodiment

24   a "microcontroller caries out the comparator functions of the comparison circuit of FIG. 12."  Id. at

25   15:25-26.  Zircon's position appears to be that, because these embodiments disclose methods other

26   than specifically division (i.e., by use of a microcontroller) for computing a ratio, Stanley's proposed

27   construction is impermissibly narrow.  However, this argument is circular because its success

28   depends on the proper construction of the term "ratio," and does not support Zircon's position unless

                                                   14

the Court agrees with its proposed construction.  Moreover, as addressed below, Stanley also argues persuasively that although the specification disclosed the division method, during the course of the prosecution history, that method was dropped from the claims, resulting in its dedication to the public.

Accordingly, the Court concludes that the intrinsic evidence, including the surrounding patent claims and the language of the specification, as well as the plain meaning of the term, establishes that the "ratio" of the '091 Patent should be construed as "a result of dividing two values."

## III.   Literal Infringement

### A.   Legal Standard

#### 1.   Summary Judgment

Summary judgment shall be granted if "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c).  Material facts are those which may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.  The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The court must not weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial. Balint v. Carson City, 180 F.3d 1047, 1054 (9th Cir. 1999).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case.  Id.  If the moving party meets its initial burden, the opposing party "may

15

1   not rely merely on allegations or denials in its own pleading;" rather, it must set forth "specific facts

2   showing a genuine issue for trial."  See Fed. R. Civ. P. 56(e)(2); Anderson, 477 U.S. at 250.  If the

3   nonmoving party fails to show that there is a genuine issue for trial, "the moving party is entitled to

4   judgment as a matter of law." Celotex, 477 U.S. at 323.

5                **2.     Patent Infringement**

6        "To prove infringement, the patentee must show that the accused device meets each claim

7   limitation either literally or under the doctrine of equivalents." Catalina Mktg. Int'l v.

8   Coolsavings.com, Inc., 289 F.3d 801, 812 (Fed. Cir. 2002).  A determination of infringement,

9   whether literal or under the doctrine of equivalents, is a question of fact.  Id.  "Literal infringement

10  requires the patentee to prove that the accused device contains each limitation of the asserted claim."

11  Id.  "Summary judgment of no literal infringement is proper when, construing the facts in a manner

12  most favorable to the nonmovant, no reasonable jury could find that the accused system meets every

13  limitation recited in the properly construed claims." Id. Where the parties do not dispute any

14  relevant facts regarding the accused product, but disagree over possible claim interpretations, the

15  question of literal infringement collapses into claim construction and is amenable to summary

16  judgment.  General Mills, Inc. v. Hunt-Wesson, Inc., 103 F.3d 978, 983 (Fed. Cir. 1997).

17       **B.     Analysis**

18       It is undisputed that Stanley's accused products compare capacitance values by subtraction,

19  obtaining a value of zero when the measurements are equal and the centerline is obtained, and do not

20  divide one capacitance measurement by the other, which would result in a value of one.  Nang Decl.

21  at ¶¶ 8-17; Polyak Decl. ¶¶ 4-19.  Therefore,  the proper construction of the term "ratio" as "a result

22  of dividing two values" results in the granting of Plaintiff's motion for summary judgment of no

23  literal infringement.  Every independent claim of the patent requires computing or generating "a

24  ratio of the first and second capacitances."  Therefore, the patent only claims a device that divides

25  one capacitance by the other capacitance, not a device that performs subtraction or some other

26  method to compare capacitance values.  Zircon has presented no evidence that the accused products

27  use division, or any method other than subtraction, and therefore there is no triable issue of fact as to

28  Stanley's infringement and summary judgment of no literal infringement is GRANTED.

**IV.   Infringement Under the Doctrine of Equivalents**

"Infringement under the doctrine of equivalents requires the patentee to prove that the accused device contains an equivalent for each limitation not literally satisfied." Id. "Where the evidence is such that no reasonable jury could determine two elements to be equivalent," summary judgment of non-infringement under the doctrine of equivalents is proper. Warner-Jenkinson, 520 U.S. at 39 n. 8. Stanley contends that each of two separate doctrines – amendment-based prosecution history estoppel and the disclosure dedication rule – legally foreclose any scope of equivalency for the "ratio" limitation that might encompass the subtraction method used by its accused products, and therefore summary judgment of non-infringement under the doctrine of equivalents is also warranted. Zircon counters that neither of these doctrines apply, and even under Stanley's proposed construction of the term "ratio," the accused products infringe under the doctrine of equivalents. Specifically, Zircon argues that Stanley's admitted "subtraction" approach to comparing capacitance values performs substantially the same function in substantially the same way to obtain the same result as does the division approach, and is an unimportant and insubstantial change and substitution.

**A.       Prosecution History Estoppel**

"The doctrine of prosecution history estoppel prevents a patent owner from recapturing within the doctrine of equivalents subject matter surrendered to acquire a patent." Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp., 523 F.3d 1304, 1312 (Fed. Cir. 2008) (citing Festo Corp. v. Sholetsu Kinzoku Kogyo Kabushiki, 344 F.3d 1359, 1365 (Fed. Cir. 2003)). Amendment-based prosecution history estoppel applies if an applicant makes a narrowing amendment to a claim element during prosecution in order to comply with a provision of the Patent Act. Festo, 344 F.3d at 1365-66. Such an amendment creates a presumption of a "general disclaimer of the territory between the original claim and the amended claim." Felix v. American Honda Motor Co., 562 F.3d 1167, 1182 (Fed. Cir. 2009). In analysing prosecution history estoppel, any narrowing amendment is presumed to be related to reasons of patentability. See Warner-Jenkinson Co. v. Hilton Davis Chemical, 520 U.S. 17, 33 (1997). Further, the Federal Circuit has held that the Festo bar to the doctrine of equivalents applies to all of the claims containing the limitation in question to ensure consistent interpretation of the same claim terms in the same patent. Glaxo Wellcome, Inc. v. Impax Laboratories, Inc., 356

F.3d 1348, 1356 (Fed. Cir. 2004) (describing doctrine of "infectious estoppel" as requiring that "subject matter surrendered via claim amendments during prosecution is also relinquished for other claims containing the same limitation.").

To overcome the presumption, a patentee must show one of the following: "(1) that the equivalent was unforeseeable at the time of the patent application; (2) that the rationale underlying the amendment bore 'no more than a tangential relation to the equivalent in question;' or (3) 'some other reason suggesting that the patentee could not reasonably be expected to have described the insubstantial substitute in question." Voda v. Cordis Corp., 536 F.3d 1311, 1325 (Fed. Cir. 2008). If the patentee cannot overcome the presumption, prosecution history bars the patentee from relying on the doctrine of equivalents to support an infringement claim. Festo, 344 F.3d at 1367.

Stanley argues that independent claim 21 of the original '356 Application claimed "comparing the first and second capacitances" without limiting the comparison method to be used. Kiersz Ex. C at S041-42. Original claims 23 and 24, dependent on independent claim 21, disclosed "determining whether the first and second capacitances differ by less than threshold" and "computing a ratio between the first and second capacitances" as alternative methods of performing the comparison of claim 21. Id. In a preliminary amendment, Zircon amended claim 21 to depend from claim 1, which was limited to the "ratio" approach, and to specifically reference "computing a ratio" instead of "comparing" generally. Id. Ex. E at S091, S094. Stanley points out that no reason was given for this voluntary amendment, which limited the formerly broad scope of claim 21 to encompass only the ratio method and surrendered "comparing" generally (which would have included subtracting), and therefore the Court may presume the amendment to have been due to patentability. See Warner-Jenkinson, 520 U.S. at 33.

The amendment relied on by Stanley states that an "Information Disclosure Statement was filed in . . . this case citing the search in the corresponding International Application," and that Zircon intended to make similar amendments to the present claims in the International Application. Id. at S099. The Information Disclosure Statement ("IDS") referenced in the amendment attached an International Search Report ("ISR") which found that an existing U.S. patent was "of particular relevance" to all of the claims, and "the claimed invention cannot be considered novel or cannot be

18

**United States District Court**
For the Northern District of California

1   considered to involve an inventive step when the document is taken alone." <u>Id.</u> Ex. D at S082.

2   Stanley contends that this portion of the file history further establishes that Zircon amended the

3   claims, including narrowing claim 21, because of a negative search report disclosed in a prior IDS

4   which was referenced briefly in the amendment.  However, the amendment does not expressly state

5   that the amendment was made because of the IDS or ISR.  Finally, Stanley notes that amended claim

6   21 was later rejected and again amended, but continued to contain only the "ratio" limitation and not

7   the broader "comparing" claim.  <u>See</u> Ex. F at S116; Ex. G at S139.

8           Stanley argues that this prosecution history shows that Zircon amended claim 21 to limit it to

9   the "ratio" method, and purposely disclaimed "comparing" generally (which would encompass the

10  "subtraction" method) for reasons of patentability.  Because all of the other independent claims

11  contain the "ratio" and not the broader "comparing" term, according to Stanley they are all limited

12  by the amendment of claim 21.  Under the doctrine of amendment-based prosecution history

13  estoppel and infectious estoppel, Zircon is therefore estopped from attempting to capture devices

14  that do not use the "ratio"  method under the doctrine of equivalents.  Because it is undisputed that

15  Stanley's accused products do not use the "ratio" method and instead use a "subtraction" method,

16  according to Stanley as a matter of law they cannot infringe under the doctrine of equivalents.

17          In opposition, Zircon argues that the amendment to original claim 21 was made simply to

18  conform to appropriate standards of patent claim pleading, in that the term "ratio" was never

19  amended and was simply added to claim 21 when it was amended to depend from claim 1 so that it

20  had a proper antecedent basis in claim 1, which already contained the term "computing a ratio."

21  Zircon notes that neither amendments to claim 1 or 21 limited the term "ratio," and prosecution

22  history estoppel should not apply to an unamended term.  At oral argument, Zircon further specified

23  its position that, for prosecution history estoppel to apply, the *element* in dispute must be amended

24  for purposes of patentability, and it is not enough for the *claim* to be amended, especially simply to

25  make it a dependent claim.  However, Zircon cited no case for this position.

26          Stanley counters that the "addition of a new claim limitation can give rise to a presumption of

27  prosecution history estoppel, just like an amendment that narrows a pre-existing claim limitation,"

28  and that prosecution history estoppel applies even where a dependent claim is merely re-written.

United States District Court
For the Northern District of California

1   See Honeywell Int'l Inc. v. Hamilton Sundstrand Corp., 370 F.3d 1131, 1141 (Fed. Cir. 2004).

2   Stanley points to cases where prosecution history estoppel applied based on amendment of a claim,

3   even though the element in question was not amended.  For example, in Honeywell, the Federal

4   Circuit held that estoppel could apply where a dependent claim was amended to be an independent

5   claim and the original independent claim was canceled, where the formerly dependent claim

6   contained an additional limitation not found in the canceled independent claim.  370 F.3d at 1141.

7   The court rejected Honeywell's argument that there was no presumption of surrender because the

8   scope of the rewritten claim was not narrowed, and stated that "the proper focus is whether the

9   amendment narrows the overall scope of the claimed subject matter."  Id.  The Court further stated

10  that, "the fact that the scope of the rewritten claim has remained unchanged will not preclude the

11  application of prosecution history estoppel if, by cancelling the original independent claim and

12  rewriting the dependent claims into independent form, the scope of the subject matter claimed in the

13  independent claim has been narrowed to secure the patent."  Id. at 1142.

14       In a related context, in Builders Concrete, Inc. v. Bremerton Concrete Products Co., 757 F.2d

15  255 (Fed. Cir. 1985), the court considered whether an asserted claim term that was not amended

16  during prosecution could estop an equivalents argument, where a related limitation was amended for

17  reasons of patentability in a different, unasserted claim.  The court held that the prosecution history

18  showed that allowance of the unasserted claim depended on its narrowing amendment to encompass

19  the scope of the narrower asserted claim (thereby surrendering the broader scope later claimed under

20  the doctrine of equivalents), and "it would exalt form over substance and distort the logic of

21  [prosecution history estoppel] jurisprudence" to hold otherwise.  Id. at 260.  The court further held

22  that, "[t]he fact that the 'passage' clause of patent claim 10 was not itself amended during

23  prosecution does not mean that it can be extended by the doctrine of equivalents to cover the precise

24  subject matter that was relinquished in order to obtain allowance of claim 1."  Id.  Deering Precision

25  Instruments, LLC v. Vector Distribution Systems, Inc., 347 F.3d 1314 (Fed. Cir. 2003) followed this

26  holding to find that the addition of a new, narrower independent claim, based on broader

27  independent and dependent claims which were deleted for reasons of patentabilty, presumptively

28  barred the patentee from arguing infringement under the doctrine of equivalents.  The court rejected

**United States District Court**
For the Northern District of California

an argument that the new claim was merely rewritten in independent form and therefore constituted only a "truly cosmetic" change, because the new claim was narrower than the original claim. Id. at 1326. The court further held that this presumption applied equally to all other claims containing the limitation in question, regardless of whether they were amended. Id.

These cases indicate that, even though the "ratio" element was not specifically amended, by making originally independent claim 21 dependent on claim 1 and substituting the narrower "ratio" language of claim 1 for the broader "comparing" language of original claim 21, the amendment narrowed the overall scope of the claimed subject matter, triggering the presumption. It is irrelevant whether "computing a ratio" was added to original claim 21 to supply an antecedent basis for claim 1; what is relevant is that by making claim 21 dependent on claim 1 and therefore substituting the narrower "ratio" language for the broader "comparing" language, Zircon surrendered the originally broad scope of claim 21 by making it dependent on claim 1 and therefore incorporating claim 1's narrower "ratio" language.

Further, it is the patentee's burden to establish the reason for the amendment, or if no explanation is established in the record, to rebut the presumption that the amendment was made for reasons of patentability. See Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co., 520 U.S. 17, 34 (1997). Zircon argues that here any presumption that the amendment was made for reasons of patentability is rebutted because the amendments to original claim 21 bear no more than a "tangential relation" to the equivalent in question. See Festo, 535 U.S. at 740. Zircon argues that the amendment was made to turn original claim 21 into a claim depending from claim 1, and simply incorporated an existing element from claim 1 into claim 21 to provide proper antecedent basis, and bore no relation whatsoever to the equivalent in question (i.e., the subtraction method). However, Zircon does not point to any explanation or evidence in the prosecution history as to why it elected to amend claim 21 to make it dependent on claim 1, thereby surrendering original claim 21's broader "comparing" language in favor of the narrower "commuting a ratio" term, or show that the amendment was made for a reason other than patentability.

Zircon's only "evidence" consists of the declaration of its former patent prosecution attorney, Mr. Wyman, stating that he does not recall amending the '091 patent based on the ISR and was not

United States District Court
For the Northern District of California

involved in preparation or filing of the supplemental IDS based on the ISR and that it was routine

practice at his firm to forward all ISRs to the PTO. See generally Wyman Decl. However, the

declaration does not explain why the amendment was made. Mr. Wyman's declaration is improper

extrinsic evidence and attorney argument not based on the file history, and in any event fails to rebut

the presumption that the amendment was made for reasons of patentability because it does not

address the reason for the amendment (other than to state that it was not because of the international

search report). In Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co. Ltd. 344 F.3d 1359, 1367

(Fed. Cir. 2003), an en banc panel of the Federal Circuit held that:

> When the prosecution history record reveals no reason for the narrowing
> amendment, Warner-Jenkinson presumes that the patentee had a substantial
> reason relating to patentability; consequently, the patentee must show that the
> reason for the amendment was not one relating to patentability if it is to rebut that
> presumption. See id. (citing Warner-Jenkinson, 520 U.S. at 33, 117 S.Ct. 1040).
> In this regard, we reinstate our earlier holding that a patentee's rebuttal of the
> Warner-Jenkinson presumption is restricted to the evidence in the prosecution
> history record. Festo VI, 234 F.3d at 586 & n. 6; see also Pioneer Magnetics, 330
> F.3d at 1356 (stating that only the prosecution history record may be considered
> in determining whether a patentee has overcome the Warner-Jenkinson
> presumption, so as not to undermine the public notice function served by that
> record). If the patentee successfully establishes that the amendment was not for a
> reason of patentability, then prosecution history estoppel does not apply.

Festo makes clear that courts should not consider an after-the-fact attorney declaration as evidence to

rebut the presumption. However, even if the Court were to consider the Wyman declaration, it does

not overcome the presumption because it does not state the reason for the amendment and whether it

was or was not for reasons of patentability.

Zircon also points out that the prior art reference that Stanley alleges as the reason for the

amendment had already been submitted to the PTO in connection with the '091 Patent on two prior

occasions, see Gikkas Decl. Ex. B (original application) at ¶ [0007]; Ex. C (6/25/04 IDS) at 4, so

there would be no reason to base the amendment on prior art later. Zircon contends that Stanley has

not explained how the prior art reference in question was relevant to the ratio element of the claim,

and it is not referenced in the Preliminary Amendment as a reason for the amendment. However, it is

Zircon's burden to overcome the presumption and Zircon has failed to overcome it based on the

evidence it has provided in its opposition. See Warner-Jenkinson, 520 U.S. at 34. Therefore,

22

United States District Court
For the Northern District of California

1   amendment-based prosecution history estoppel of original claim 21, which relinquished its broad

2   scope of "comparing" (which would have included subtraction) in favor of the narrower "computing

3   a ratio" of claim 1, bars Zircon from using the doctrine of equivalents to cover subtraction as

4   equivalent to division.

5         Finally, Zircon argues that, in addition to the foregoing, in any event the infectious estoppel

6   doctrine does not apply because the amendment in question was not made in response to any office

7   action.  Therefore, at best estoppel would apply to claim 21 and no other.  However, infectious

8   estoppel can be applied in connection with a preliminary, or voluntary, amendment (as opposed to an

9   amendment in response to an office action) and Stanley cites numerous cases holding this to be true.

10  See Reply at 15; see also Festo, 344 F.3d at 1366 ("We next reinstate our holding that a 'voluntary'

11  amendment may give rise to prosecution history estoppel.").  Therefore, infectious estoppel bars

12  Zircon from asserting the doctrine of equivalents for any independent claim containing the term

13  "ratio."

14        In light of the foregoing, summary judgment of non-infringement based on the doctrine of

15  equivalents is GRANTED on the basis of amendment-based prosecution history estoppel.

16        **B.      Disclosure-Dedication**

17        The disclosure-dedication rule provides that, "when a patent drafter discloses but declines to

18  claim subject matter . . . this action dedicates that unclaimed subject matter to the public. Application

19  of the doctrine of equivalents to recapture subject matter deliberately left unclaimed would 'conflict

20  with the primacy of the claims in defining the scope of the patentee's exclusive right.' " *Johnson &*

21  *Johnston Associates Inc. v. R.E. Service Co.*, Inc. 285 F.3d 1046, 1054 (Fed. Cir. 2002).  The Federal

22  Circuit has described the extent of the disclosure that will suffice to invoke this doctrine as follows:

23              [I]f one of ordinary skill in the art can understand the unclaimed disclosed
                teaching upon reading the written description, the alternative matter disclosed has
24              been dedicated to the public.  This "disclosure-dedication" rule does not mean
                that any generic reference in a written specification necessarily dedicates all
25              members of that particular genus to the public.  The disclosure must be of such
                specificity that one of ordinary skill in the art could identify the subject matter
26              that had been disclosed and not claimed.

27  PSC Computer Products, Inc. v. Foxconn Intern., Inc., 355 F.3d 1353, 1360 (Fed. Cir. 2004).

28        Stanley contends that the '091 Patent specification discloses two separate approaches for

                                                    23

1   comparing the capacitance values of its sensors to determine the centerline of a stud:  a ratio by

2   division and a difference by subtraction.  See '091 Patent at 14:34-66.  Specifically, Stanley points

3   to statements in the specification that "The comparison circuit [] may determine whether the

4   capacitive measurements are within a predetermined value of each other," (14:50-52) and that

5   "[c]apacitance measurements may be considered equal when they are within a predetermined

6   percentage value or absolute value from each other" (14:63-66).  Stanley also cites portions of the

7   prosecution history, where Zircon stated that the capacitances could be compared by "determining

8   whether the first and second capacitances differ by less than a threshold."  Kiersz Decl. Ex. C at

9   S041-42.  These statements disclose values being subtracted from one another to determine the

10  difference between them.

11      Stanley also contends that the specification presents the "percentage value" and "absolute

12  value" as alternatives ('091 Patent at 14:63-66), and argues that it is a matter of "basic math" that the

13  "percentage value" is a ratio obtained by dividing two values, while an "absolute value" is

14  determined by subtracting one number from another.  Likewise, the specification states that the

15  invention finds a centerline by determining "if the capacitance ratio is approximately equal to unity,

16  or alternatively, if the capacitance measurements are approximately equal to one another."  Kiersz

17  Decl. Ex. A ('091 Patent) at 19:30-33.  Stanley argues that these alternatives presented in the

18  specification also disclose both division to obtain a ratio and subtraction to obtain a difference.

19      Because the independent patent claims all require comparison by the "ratio" approach (i.e.,

20  division), and do not claim the disclosed subtraction method, Stanley contends that Zircon is legally

21  barred from now claiming the subtraction method as part of the invention under the doctrine of

22  equivalents.  Zircon does not dispute that the patent discloses both subtraction and division, but

23  counters that it claimed both the subtraction and division approaches for computing a ratio, and

24  specifically refers to claims 10, 19, and 21.  However, as discussed above, the term "ratio" as used

25  in the '091 patent is limited to division, and therefore Zircon disclosed in the specification, but did

26  not claim, the subtraction method used by Stanley.  Accordingly, summary judgment of non-

27  //

28  //

24

infringement based on the doctrine of equivalents is also warranted based on the alternative theory of disclosure-dedication.

**IT IS SO ORDERED.**

Dated: May 14, 2010

ELIZABETH D. LAPORTE
United States Magistrate Judge

United States District Court
For the Northern District of California

25